AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
для the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>T-Mobile (Black and Red)<br>Model: Samsung Galaxy<br>IMEI: 357492495353433 | )<br>)<br>)   Case No.   22MJ8791<br>)<br>)<br>) |

**FILED**
11/29/2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   vyc   DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Moncerad Soto incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Moncerad Soto
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 11/29/2022

*Judge's signature*

City and state:   El Centro, California            HON. LUPE RODRIGUEZ, JR., US MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

>T-Mobile (Black and Red)
>Model: Samsung Galaxy
>IMEI: 357492495353433
>Seized from Edward CHAVEZ-Salazar
>**(Target Device #1)**



 The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEM TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 9, 2022, up to and including November 9, 2022, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of Title 8 U.S.C. § 1324.

# AFFIDAVIT

I, Moncerad Soto, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> T-Mobile (Black and Red)
> Model: Samsung Galaxy
> IMEI: 357492495353433
> Seized from Edward CHAVEZ-Salazar
> **(Target Device)**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Edward CHAVEZ-Salazar (CHAVEZ) for transportation of illegal aliens Marciano BAUTISTA-Flores and Adriana MARIANO-Salazar (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Device was seized from CHAVEZ on or about November 8, 2022, incident to the arrest of CHAVEZ. The Target Device is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

1

# EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since February 2016, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning

accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

3

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On November 8, 2022, Border Patrol Agents assigned to the El Centro Sector Intelligence Unit (Field Intelligence Team) were conducting anti-smuggling and intelligence gathering duties within the El Centro Border Patrol Sector's area of responsibility. The FIT investigates alien smuggling and all other illicit cross-border activity in southern California's Imperial Valley and the surrounding areas. The Agents were dressed in plain clothes and operating unmarked service vehicles in an attempt to blend in with the public and covertly search for criminal activity.

11. At approximately 6:30 p.m., Agent Botello was parked at the junction of Highway 98 and Interstate 8 near Calexico, California. Agent Botello observed a silver

Mercedes sedan pass him travelling east on Highway 98 then merge onto Interstate 8 travelling west. After catching up to the vehicle, Agent Botello confirmed the license plate and this particular Mercedes is a known FIT target. Record checks showed Agents placed alerts in DHS systems for this vehicle on September 14, 2022 following suspicious activity. Once Agent Botello identified the target vehicle, he notified other FIT Agents of the vehicle's location and direction of travel. The FIT responded and conducted joint mobile surveillance. Agents observed as the Mercedes drove to Calexico and parked at an apartment complex on Paulin Avenue. FIT Agents established a perimeter and, after approximately 90 minutes, the Mercedes left the apartment complex and travelled east towards agriculture fields on Highway 98.

12. Agents conducted surveillance on the Mercedes from a distance, including Agent Garcia from an unmarked vehicle. At this time, two suspected illegal aliens ran up to Agent Garcia's vehicle and attempted to get inside. Agent Garcia drove away and notified the FIT of his encounter. Agent Castaneda was also watching the Mercedes and observed it turn around and drive towards the location where the two aliens attempted to enter Agent Garcia's vehicle. The Mercedes briefly stopped in the same general area then drove away. Based on their training and experience, FIT Agents believed the Mercedes was in the area to pick up the two illegal aliens and a smuggling attempt was imminent. The FIT continued mobile surveillance and followed the Mercedes to El Centro on Interstate 8 to the Imperial Avenue exit. The Mercedes drove to a residential neighborhood and parked on Southwind Drive. After approximately ten minutes, a burgundy Honda Accord arrived and parked directly behind the Mercedes. Agent Clinton observed a female exit the Mercedes and walk towards the Honda. Moments later, both vehicles left in tandem.

13. The Mercedes drove towards Interstate 8 while the Honda entered a nearby apartment complex on Cottonwood Circle. Agent Garcia drove behind the Mercedes and did not see any rear passengers, therefore, FIT believed the vehicles may have conducted a transfer of the individuals on Southwind Drive. After the FIT believed that

the Mercedes was not carrying passengers, surveillance was terminated on the Mercedes and the FIT focused their concentration on the Honda. Agent Botello pulled into the apartment complex and located the Honda in the parking lot. Agents Botello, Clinton, and Castaneda approached the Honda on foot with agency identifiers visible. The driver, later identified as CHAVEZ, was sitting in the driver's seat and lowered the window. Agent Botello identified himself as a Border Patrol Agent and determined through questioning that CHAVEZ was a citizen of the United States.  Agent Clinton interviewed the rear seat passengers regarding their citizenship and Marciano BAUTISTA-Flores and Adriana MARIANO-Sandoval both freely admitted to being citizens of Mexico illegally present in the United States. BAUTISTA and MARIANO both admitted they made an illegal entry by climbing the border fence by walking through an area other than through a designated Port of Entry.  CHAVEZ, BAUTISTA and MARIANO were placed under arrest.

14. During an inventory search of the Honda incident to CHAVEZ's arrest, BPA Clinton located the Target Device in the center console.  CHAVEZ claimed the Target Device as his own phone but did not provide consent to search the phone.

15. Material Witness BAUTISTA stated he made arrangements to be smuggled into the United States for $8,500.00 USD. BAUTISTA was presented with a six-pack photo line-up and was able to identify CHAVEZ as the person driving the vehicle.  Material witness MARIANO stated she made arrangements to be smuggled into the United States for $8,500.00 USD. MARIANO was unable to identify anyone from the photographic line-up.

16. Based upon my experience and investigation in this case, I believe that CHAVEZ and other persons, as yet unknown, were involved in an alien smuggling venture and that CHAVEZ used the Target Device to coordinate with the, as yet unknown, persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages,

pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

17. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Device for data beginning on October 9, 2022 up to and including November 9, 2022, the day after the arrest of CHAVEZ.

## METHODOLOGY

18. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and

record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone, and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

21. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that CHAVEZ used the Target Device to facilitate the offense of alien smuggling. The Target Device likely was used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by CHAVEZ, the Material Witnesses, and others continues to exist on the Target Device. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Moncerad Soto, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 29th day of November, 2022.

_____  3:47 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

> T-Mobile (Black and Red)
> Model: Samsung Galaxy
> IMEI: 357492495353433
> Seized from Edward CHAVEZ-Salazar
> **(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEM TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 9, 2022, up to and including November 9, 2022, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of Title 8 U.S.C. § 1324.